June 22, 2018

**Supreme Court**

No. 2016-143-Appeal.
(PM 09-5227)

Angel Navarro            :

v.                  :

State of Rhode Island.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Angel Navarro     :

v.        :

State of Rhode Island.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The applicant, Angel Navarro,[1] appeals from a postconviction-relief judgment in favor of the State of Rhode Island and against Navarro. In those proceedings, Navarro challenged the trial court's acceptance of his nolo contendere plea on a second-degree murder charge. Navarro's plea was "capped" at sixty years, with forty years to serve and twenty years suspended with probation following his release, and the maximum sentence was imposed. This matter came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and we proceed to decide the appeal at this time. For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

On August 19, 1999, Alfred C. Moon, M.D., was found dead inside his residence. From 1999 to 2004, police investigated Dr. Moon's mysterious death, to no avail. Then, on June 23,

_____

[1] Mr. Navarro is also identified in the record as Victor Medina, an apparent alias.

2004, after police received information about a potential suspect, Navarro was arrested. On July 8, 2005, a grand jury indicted Navarro for murder in violation of G.L. 1956 §§ 11-23-1 and 11-23-2. On November 16, 2006, Navarro entered into a plea agreement, whereby he pled nolo contendere to an amended charge of second-degree murder, and his sentence was "capped" at sixty years, with forty years to serve and the twenty-year balance suspended with probation.

The plea proceedings began with the state's motion to amend the charge to second-degree murder, which the hearing justice granted. Next, the hearing justice asked if Navarro understood that by entering his plea he would be giving up the rights contained in the plea form; to which Navarro responded, "Yes." The hearing justice then asked Navarro if he had reviewed the plea form with his attorney (trial counsel). Navarro again responded in the affirmative. At this point, trial counsel asked the hearing justice for an opportunity to speak with Navarro about "a question" regarding, as the attorney described it, "the back end of the number which I did not go over with [Navarro]." Then, trial counsel and Navarro conferred off the record.

Subsequently, the hearing justice informed Navarro that he was giving up his right to a trial and explained to Navarro what it meant to give up that right. The hearing justice then asked Navarro if he had any questions, to which Navarro responded, "No, your Honor." Following Navarro's acceptance of the prosecution's statement of the facts as true, the hearing justice informed Navarro that the plea was capped and agreed upon by Navarro, the state, and trial counsel. The hearing justice further explained that the sentence could be no more than sixty years with forty years to serve and asked Navarro: "If I accept your plea and cap that sentence with those years, you can't change your mind later on about this. Do you understand?" Navarro responded that he understood. The hearing justice indicated that the sentencing was to be held at a separate hearing, at which time the court would consider a presentence report and the

recommendations of the state and trial counsel.  The hearing justice further informed Navarro that he would also have an opportunity to address the court.

Again, the hearing justice said to Navarro: "If the maximum sentence is imposed that can be imposed under this agreement, you could end up spending [forty] years in prison.  Do you understand that?"  Navarro replied, "Yes."  The hearing justice then warned Navarro that during the entire sixty-year sentence, if imposed, he would have to abide by the terms of his probation, to which Navarro again responded that he understood.  Lastly, the hearing justice asked Navarro if he had any questions, to which Navarro replied, "No."

On December 13, 2006, the same justice conducted Navarro's sentencing hearing.  At that time, Dr. Moon's colleague, his two sons, and his daughter addressed the court.  Navarro's mother and wife[2] also addressed the court, as did Navarro.  In his statement, Navarro apologized to Dr. Moon's family and expressed remorse.

During the sentencing hearing, trial counsel made a sentence recommendation on Navarro's behalf.  He stated that "[Navarro] is sincere when he says that his only wish and prayer would be to reverse the events of August 17, 1999 that led to such a tragedy" and that Navarro "has admitted to being responsible for the death of Dr. Moon."  Trial counsel described Navarro's difficult upbringing and pointed out that the totality of his criminal past was nonviolent and related to his challenges with addiction.  Trial counsel chronicled the events that occurred on the night of the murder from Navarro's perspective and provided a very detailed recitation of the circumstances that led to Dr. Moon's death.  He noted that Navarro had been released from prison three days prior to Dr. Moon's murder, after serving time for heroin

---

[2] We note that the transcript of the sentencing hearing is missing three pages that we presume include part of Navarro's wife's statement to the court.

possession.  Earlier that day, Navarro had "sniffed" two bags of heroin and had been drinking heavily.

Additionally, trial counsel cited to his research on sentences in other second-degree murder cases, which revealed terms of less than five years to up to forty years to serve.  He further noted that the average sentence of the thirty-six cases he examined was fifty years with twenty-seven years to serve.  He distinguished the instant case from others, arguing that in this case "[t]here was a degree of provocation and an element of self-defense."  He further argued that Navarro's sentence should be reduced because he had taken responsibility for Dr. Moon's death, showed genuine remorse, and demonstrated "a true sense of trying to right his wrongs."

Furthermore, trial counsel explained that Navarro had "assisted the prosecution in the United States District Court for charges that occurred while [Navarro] was serving at the [Adult Correctional Institutions] and witnessed an alleged crime."  In summation, trial counsel recommended that Navarro be sentenced to forty years with fifteen to twenty years to serve, and trial counsel also recommended that Navarro participate in treatment for anger management and substance abuse.

After reviewing the facts of the case, the hearing justice noted that, for four years while law enforcement worked to solve Dr. Moon's murder, Navarro failed to take responsibility and remained at large.  In addition, the hearing justice noted the severity of the attack, Navarro's criminal history, his likelihood of rehabilitation, and trial counsel's research on sentencing in second-degree murder cases.  The hearing justice sentenced Navarro to the maximum sentence under the capped plea agreement: sixty years imprisonment, with forty years to serve and twenty years suspended with probation following Navarro's release.

On September 11, 2009, Navarro filed a *pro se* application for postconviction relief. Navarro sought to have his sentence vacated pursuant to G.L. 1956 § 10-9.1-1. He essentially asserted two arguments in support of his application for postconviction relief: (1) ineffective assistance of counsel and (2) failure by the hearing justice to adequately explain to Navarro his waiver of constitutional rights when he pled nolo contendere. On October 23, 2009, the state filed its answer and a motion to dismiss Navarro's application for postconviction relief. On September 21, 2010, Navarro's court-appointed counsel for his postconviction-relief application (postconviction counsel) entered an appearance on his behalf.

Prior to the postconviction-relief hearing, postconviction counsel filed a motion to withdraw in accordance with the procedures outlined in *Shatney v. State*, 755 A.2d 130 (R.I. 2000). *See also Campbell v. State*, 56 A.3d 448, 455-56 (R.I. 2012) (indicating that in *Shatney*, we set forth a mechanism that allows "an attorney * * * appointed to represent an indigent applicant [to] withdraw from that representation when it becomes clear, after a reasonable investigation, that some or all of the applicant's claims lack merit").

On October 20, 2011, a justice of the Superior Court heard the parties on Navarro's application for postconviction relief. The postconviction-relief justice noted that "[t]he [c]ourt * * * appointed an attorney to investigate the petitioner's claim to determine if there was any merit to the same." Navarro's postconviction counsel indicated that he had been "appointed in this case to represent Mr. Navarro in his [postconviction-relief] petition." Postconviction counsel reported to the justice that, after he obtained the case, he met with Navarro approximately four times. In addition, postconviction counsel stated that he reviewed all pertinent exhibits and transcripts. He also spoke with trial counsel "at length at least four times regarding the actual plea." Postconviction counsel then submitted to the justice that, based on

his review of the case, Navarro understood the ramifications of his plea. Moreover, postconviction counsel stated: "In my professional opinion, there is no reasonable avenue by way of [postconviction] [r]elief that Mr. Navarro could gain through this petition." Therefore, he asked the justice for permission to withdraw as Navarro's counsel. In response to his counsel's request to withdraw, Navarro stated that he agreed with postconviction counsel's summary of the facts relating to what postconviction counsel had done in his case.

At that point during the proceedings, the postconviction-relief justice told Navarro, "[I]t's my responsibility * * * after I receive a report from an attorney * * * to kind of go through the facts myself to make sure that I think he's covered everything. And I'm satisfied there is an accurate record to substantiate what he's just said before the [c]ourt." The justice further indicated that she "had a couple of opportunities" to review the record. She reviewed the plea form, the transcript of the plea hearing, the transcript of the sentencing hearing, postconviction counsel's memorandum, and, in particular, the section in which postconviction counsel summarized his conversations with trial counsel.

The postconviction-relief justice found, after reviewing the entire record, that Navarro entered his plea "with knowledge, consent, voluntarily, understanding what was happening, the nature of the plea, [and] the consequences of it" and that Navarro's trial counsel provided "more than adequate representation." The justice also agreed with postconviction counsel's conclusion that Navarro's claims lacked merit and, accordingly, decided that she was "going to allow [postconviction counsel] to withdraw." No order was entered as to either decision at that time.

Upon issuing her decision orally, the postconviction-relief justice informed Navarro that he had a right to further pursue the matter *pro se*. Navarro responded that he did not wish to pursue the matter, but instead he sought to file a motion for modification of his sentence. In

response, the justice scheduled a future status date and indicated that Navarro could utilize the time prior to his next court date to consider his strategy moving forward. Navarro again informed the justice that he did not want to pursue his postconviction-relief application; however, the justice persisted in scheduling the matter for a further court date. She noted that the future date would give Navarro the opportunity to "talk to [postconviction counsel] about the sentencing issue * * *." The justice further informed postconviction counsel that, after he spoke with Navarro, he would be allowed to withdraw as Navarro's postconviction counsel.

In a letter dated October 29, 2011, Navarro wrote to an attorney (former counsel) who had represented him prior to his representation by trial counsel. In the letter, Navarro asked former counsel to send him the name of the prosecutor who had offered a plea deal that purportedly would have given Navarro assistance with his sentence if he provided testimony in an unrelated case. Former counsel sent a letter in response, wherein he provided Navarro with the prosecutor's name and explained that the prosecutor did in fact consider Navarro's testimony and that the prosecutor's consideration resulted in a proposed thirty-two-year sentence. Former counsel further explained in the letter that, because Navarro decided not to take the thirty-two-year offer and instead retained a new attorney, Navarro would have needed to raise the previously proposed plea agreement at his sentencing hearing.

The matter was again before the postconviction-relief justice on March 16, 2012. At that time, Navarro discussed the letter that he had received from his former counsel regarding the offer of a thirty-two-year sentence. Navarro argued that the letter was "proof [he] was getting [thirty-two] years." The postconviction-relief justice concluded, as former counsel stated in the letter, that Navarro had no plea agreement with the state and had not raised the state's offer at his sentencing. She further informed Navarro that he needed to put forth "something different"

because in the prior hearing she had already decided that Navarro did not receive ineffective assistance from his trial counsel. Navarro responded by expressing his intention to file an appeal with this Court. The justice then instructed Navarro to speak with postconviction counsel about the timing of his appeal. In addition, the justice asked postconviction counsel to prepare an order that indicated she had accepted postconviction counsel's *Shatney* memorandum, that Navarro had "nothing new to offer other than what [the postconviction-relief justice] discussed before," and that Navarro intended to file an appeal.

On April 18, 2012, Navarro filed a *pro se* notice of appeal to this Court. During an August 1, 2012 status conference, Navarro stated: "I just wanted to appeal to the Supreme Court." The postconviction-relief justice indicated that an order was to be entered in the case at the end of the week. The postconviction-relief justice then confirmed orally on the record that Navarro's application for postconviction relief was denied; however, no order was entered at that time. On April 27, 2016, judgment entered on Navarro's application for postconviction relief in favor of the state and against Navarro.[3] On October 4, 2017, Navarro filed a motion for the appointment of counsel, which this Court granted.

## II

### Standard of Review

Under Rhode Island law, a defendant can seek postconviction relief pursuant to § 10-9.1-1. Postconviction relief "is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Bell v. State*, 71 A.3d 458, 460 (R.I. 2013) (quoting *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I. 2011)). "Accordingly, in all criminal prosecutions, one who alleges the

---

[3] This Court has not been made aware of the reason for the delay in the entry of judgment.

infringement of his or her constitutional Sixth Amendment right to the assistance of counsel may avail his or herself of the postconviction-relief process." *Rice v. State*, 38 A.3d 9, 16 (R.I. 2012). "'[T]he burden of proving, by a preponderance of the evidence, that such [postconviction] relief is warranted' falls on the applicant." *Motyka v. State*, 172 A.3d 1203, 1205 (R.I. 2017) (quoting *Anderson v. State*, 45 A.3d 594, 601 (R.I. 2012)). "This Court will not disturb a [hearing] justice's factual findings made on an application for post[]conviction relief absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings." *Chapdelaine*, 32 A.3d at 941 (quoting *Gordon v. State*, 18 A.3d 467, 473 (R.I. 2011)). In addition, we will not disturb a hearing justice's credibility determinations unless the applicant shows, by a preponderance of the evidence, that the hearing justice was clearly wrong. *Guerrero v. State*, 47 A.3d 289, 299 (R.I. 2012). "We will, however, 'review *de novo* any post[]conviction[-]relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Bell*, 71 A.3d at 460 (quoting *Chapdelaine*, 32 A.3d at 941). "Even when applying the *de novo* standard of review to such issues, however, 'we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference * * *.'" *Jolly v. Wall*, 59 A.3d 133, 138 (R.I. 2013) (quoting *Anderson*, 45 A.3d at 601).

## III

### Analysis

On appeal, Navarro essentially asserts the same arguments that he raised in Superior Court, albeit now with greater clarity. He contends that he received ineffective assistance from his trial counsel and that the hearing justice committed judicial error. Pursuant to his ineffective-assistance-of-counsel argument, Navarro contends that he signed the plea form, which he

maintains was blank at the time, only because trial counsel informed him and his family that the sentence would be fifteen years or, at most, seventeen years. He further cites to a section of the plea transcript where his trial counsel asked the hearing justice for an opportunity to confer with Navarro about "the back end of the number * * *." It is at that point in time, Navarro contends, that trial counsel informed him "not to worry about the number [forty] [because he] was going to serve in the teens."

Navarro similarly supplements his judicial-error argument on appeal. He avers that the hearing justice failed to ask Navarro "if anybody made threats or promises" to him during the plea negotiations. He maintains that he would have responded in the affirmative to such an inquiry.

## A

### Ineffective Assistance of Counsel and Judicial Error

"This Court adheres to the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when evaluating claims of ineffective assistance of counsel." *Chapdelaine*, 32 A.3d at 941 (quoting *Rodriguez v. State*, 941 A.2d 158, 162 (R.I. 2008)). In order to prevail on a claim of ineffective assistance of counsel, an applicant must satisfy two criteria. *Id.* "First, the applicant must demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Id.* (quoting *Rodriguez*, 941 A.2d at 162). "This prong can be satisfied only by a showing that counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Rodriguez*, 941 A.2d at 162). In our evaluation of counsel's performance, "a strong presumption" exists "that an attorney's performance falls within the range of reasonable professional assistance and sound

strategy * * *." *Rivera v. State*, 58 A.3d 171, 180 (R.I. 2013) (quoting *Rice*, 38 A.3d at 17). "Second, the defendant must show that the deficient performance prejudiced the defense." *Neufville v. State*, 13 A.3d 607, 610 (R.I. 2011) (quoting *Powers v. State*, 734 A.2d 508, 522 (R.I. 1999)). "'When evaluating a claim for ineffective assistance of counsel in a plea situation, the defendant must demonstrate a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial' and, importantly, that the outcome of the trial would have been different." *Id.* at 610-11 (quoting *State v. Figueroa*, 639 A.2d 495, 500 (R.I. 1994)).

As noted above, at the conclusion of postconviction counsel's presentation of his findings contained in his no-merit *Shatney* memorandum, the postconviction-relief justice informed Navarro that "it's my responsibility at this point after I receive a report from an attorney * * * to kind of go through the facts myself to make sure that I think he's covered everything." The justice did not address the state's motion to dismiss and instead proceeded to decide the matter on the merits. The justice indicated that she "had a couple of opportunities" to review the record of the case, in addition to her review of postconviction counsel's memorandum, the plea form, the transcript of the plea hearing, and the transcript of the sentencing hearing. Specifically, the postconviction-relief justice reviewed the portion of postconviction counsel's no-merit memorandum regarding his conversations with trial counsel related to the plea. Additionally, she acknowledged the statements by Navarro's mother and wife at the sentencing hearing explaining Navarro's background, his issues with addiction, how their lives would be impacted if Navarro was incarcerated for a long period of time, and their belief that Navarro was prepared to rehabilitate himself. The postconviction-relief justice also noted that Navarro and trial counsel both signed the plea form and that the hearing justice discussed the plea with Navarro, including

- 11 -

his attendant rights. Moreover, she took note of Navarro's statement to the court at the sentencing hearing.

The postconviction-relief justice also considered trial counsel's representation of Navarro during the plea proceedings, including his "strong argument" on behalf of Navarro at the sentencing hearing; his "very impassioned" sentence recommendation; his argument that Navarro's criminal past was only related to his addiction issues; his presentation of Navarro's recollection of the events that took place on the night of the murder; and his research on sentences in second-degree murder cases, which trial counsel "discussed at length," together with his conclusion that the average sentence was "far less" than the maximum sentence of forty years to serve under Navarro's capped plea. Bearing in mind her thorough review of the entire record, we conclude that the postconviction-relief justice did not overlook or misconceive material evidence in concluding that trial counsel's representation was not deficient and did not "f[a]ll below an objective standard of reasonableness." *Chapdelaine*, 32 A.3d at 943 (quoting *Strickland*, 466 U.S. at 687-88).

In light of our determination that trial counsel's performance was reasonable, we need not address the second prong of *Strickland* requiring that "counsel's deficient performance prejudiced the defense in this case." *Neufville*, 13 A.3d at 614 (concluding that a court should only reach the second prong of the *Strickland* test when it has determined that the attorney's representation was deficient).

Additionally, Navarro contends that the hearing justice erred when he failed to ask Navarro "if anybody made threats or promises" to him during the plea negotiations. Specifically, in regard to the purported previous plea agreement, Navarro maintains that, had he known he would serve forty years, he would have taken the offer of thirty-two years to serve from former

counsel, "but [trial counsel] told [Navarro] that he can get [him] less time to serve that's why [he] hired [trial counsel.]" "It is well settled in this state that '[g]uilty pleas are valid only if voluntarily and intelligently entered, and the record must so affirmatively disclose' facts pertaining to those requirements." *Rodrigues v. State*, 985 A.2d 311, 314 (R.I. 2009) (quoting *Figueroa*, 639 A.2d at 498). A defendant's plea "will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting [the] plea [in order] to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequences of the plea." *State v. Frazar*, 822 A.2d 931, 935 (R.I. 2003) (quoting *Ouimette v. State*, 785 A.2d 1132, 1136 (R.I. 2001)).

In her review of the proceedings, the postconviction-relief justice acknowledged the extended nature of the sentencing hearing. In addition, she thoroughly studied the transcript of the plea proceeding and concluded that the hearing justice who presided over said proceeding was "very clear" to Navarro as to "what the plea was—what the cap of the plea was." She further found that the hearing justice informed Navarro of his rights in relation to the plea. She considered the hearing justice's explanation to Navarro regarding the nature of the capped plea, as well as the hearing justice's warning to Navarro that once he accepted the plea, he could not change his mind. She cited to the hearing justice's statement to Navarro that if the maximum sentence was in fact imposed, he would have to serve forty years in prison; she also cited to the hearing justice's follow-up question asking Navarro if he understood and Navarro's affirmative answer. The postconviction-relief justice also took note of the hearing justice's inquiry to Navarro as to whether he had any questions, to which Navarro replied, "No." She further considered the hearing justice's explanation to Navarro regarding the upcoming sentencing hearing. She also noted that, although trial counsel may have made a sentence recommendation

to the hearing justice during the sentencing proceedings that Navarro should serve between fifteen and twenty years, the hearing justice was nevertheless "very clear" at the plea hearing that Navarro "could very well end up serving [forty] years in jail."

After her thorough review of the record, the postconviction-relief justice concluded that Navarro entered into the plea agreement "with knowledge, consent, voluntarily, understanding what was happening, the nature of the plea, [and] the consequences of it." We agree; and we conclude that, in making her determination, the postconviction-relief justice did not overlook or misconceive material evidence, nor did she clearly err in her denial of Navarro's postconviction-relief application.

## B

### *Shatney* Proceedings

We note that at the outset of the postconviction-relief proceedings in Superior Court, the justice mischaracterized postconviction counsel's role in Navarro's case as an investigator appointed by the court to determine if Navarro's claims had merit, as opposed to Navarro's counsel in pursuit of postconviction relief. We have previously clarified that neither *Shatney v. State*, 755 A.2d 130 (R.I. 2000)

> "nor its progeny contemplates the appointment of an objective or independent lawyer who does not represent the applicant,' and that '[g]enerally, *Shatney* considerations should arise after counsel has been appointed in accordance with § 10-9.1-5 and the applicant has been provided with a meaningful discussion with counsel about the issues that may or may not be suitable grounds for postconviction relief." *Ramirez v. State*, 89 A.3d 836, 840 (R.I. 2014) (quoting *Campbell*, 56 A.3d at 456).

Despite the postconviction-relief justice's mistaken description of postconviction counsel's role, postconviction counsel properly represented Navarro pursuant to the requirements set forth in *Shatney*. Postconviction counsel described his role as being appointed to represent

- 14 -

Navarro in his postconviction-relief application. Postconviction counsel appropriately conducted his representation of Navarro by meeting with Navarro's trial counsel "at least four times regarding the actual plea." In addition, he met with Navarro four times and reviewed all the transcripts and exhibits that he deemed pertinent. Notwithstanding the brevity of postconviction counsel's *Shatney* memorandum—only four pages—we conclude that his investigation of Navarro's claims was reasonable under *Shatney*. *Campbell*, 56 A.3d at 455-56 (noting that according to *Shatney*, an attorney "may withdraw from * * * representation when it becomes clear, after a reasonable investigation, that some or all of the applicant's claims lack merit").

Furthermore, we are satisfied that the postconviction-relief justice was cognizant of this Court's concerns with the *Shatney* procedures and made concerted efforts to ensure that Navarro understood his rights in the *Shatney* context. *See Motyka*, 172 A.3d at 1206 (recognizing that, when the court permits counsel to withdraw pursuant to *Shatney*, it must "advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application") (quoting *Shatney*, 755 A.2d at 135). The postconviction-relief justice asked Navarro three times if he wanted an evidentiary hearing or to pursue the matter *pro se*, and each time he responded in the negative. Moreover, the justice brought Navarro into court on three separate occasions, and each time he was given an opportunity to be heard. On the third and final court date, August 1, 2012, the postconviction-relief justice noted that since the last court date:

> "[O]ur Rhode Island Supreme Court had entered or filed a case on post[]conviction relief and my understanding from that case is that I need to be very specific with you, sir, as to what you wanted to do after [postconviction counsel] finished and presented his *Shatney* memo. I gave you an opportunity to refile it and to argue it again if you wish to. You told me you did not wish to do that. I guess—I think I need to be clearer with you and indicate to you that if you wish to produce any witnesses or have an evidentiary hearing on the issues that you have raised in your post[]conviction relief, you have the right to do that and proceed on this on your

own. * * * Do you want to have—produce evidence or have an evidentiary hearing on the issues that you have raised?"

In response, Navarro replied: "I just wanted to appeal to the Supreme Court."

We note that, after the postconviction-relief justice reviewed all the evidence, agreed with postconviction counsel that Navarro's postconviction-relief application was without merit, accepted postconviction counsel's no-merit *Shatney* memorandum, and indicated that she was "going to allow him to withdraw[,]" postconviction counsel's representation of Navarro should have ceased. Instead, however, subsequent to her *Shatney* determination, the postconviction-relief justice informed Navarro that postconviction counsel could advise him on his plans to file a motion for "[s]entence modification."

Recently, in *Motyka*, we questioned whether the proceedings in that case met the requirements set forth in *Shatney*. *Motyka*, 172 A.3d at 1207. We expressed concern when the applicant's postconviction counsel appeared to be advising the applicant during the *Shatney* hearing while simultaneously arguing in support of his no-merit memorandum. *Id.* at 1207, 1207 n.3. Additionally, we took issue in that case with the justice's statement that she found postconviction counsel's no-merit memorandum "justified" and "therefore" the applicant's postconviction-relief application was denied and dismissed. *Id.* We clarified that a justice's grant of a postconviction counsel's motion to withdraw under *Shatney* is not determinative of the merits of an applicant's postconviction-relief application. *Id.*

Here, the postconviction-relief justice asked postconviction counsel to continue to advise Navarro in the matter, specifically with respect to his appeal, while postconviction counsel concurrently offered his opinion that Navarro's postconviction-relief application lacked merit. We reiterate that, in a *Shatney* proceeding, counsel may indeed seek to withdraw his or her representation "when it becomes clear, after a reasonable investigation, that some or all of the

- 16 -

applicant's claims lack merit." *Campbell*, 56 A.3d at 455-56. In this case, once the postconviction-relief justice made her decision to grant the *Shatney* motion, postconviction counsel should no longer have been expected or allowed to represent Navarro at the subsequent two court dates. We note, however, that this case was heard by the postconviction-relief justice prior to a number of cases decided by this Court that clarify the requirements under *Shatney*. *See, e.g.*, *Motyka*, 172 A.3d at 1208; *Ramirez*, 89 A.3d at 839-40; *Campbell*, 56 A.3d at 455-56. In addition, notwithstanding the postconviction-relief justice's comments on the record that seem to conflate her *Shatney* review with her review of the merits of Navarro's postconviction-relief application, she nevertheless conducted a thorough and independent review of the record in support of her denial of Navarro's postconviction-relief application. Therefore, it is our opinion that any *Shatney*-related issues were cured.

## IV

### Conclusion

For all the reasons set forth herein, we affirm the Superior Court's judgment denying Navarro's application for postconviction relief. The papers in this case may be remanded to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Angel Navarro v. State of Rhode Island. |
| **Case Number** | No. 2016-143-Appeal. (PM 09-5227) |
| **Date Opinion Filed** | June 22, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Susan E. McGuirl |
| **Attorney(s) on Appeal** | For Applicant: <br><br> Carl J. Ricci, Esq. |
| | For State of Rhode Island: <br><br> Christopher R. Bush <br> Department of Attorney General |