January 17, 2019

**Supreme Court**

No. 2016-102-M.P.
(PM 14-5309)

Kendall Whitaker                    :

v.                    :

State of Rhode Island.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kendall Whitaker      :

v.      :

State of Rhode Island.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  The State of Rhode Island seeks review of a Superior Court judgment that granted Kendall Whitaker's application for postconviction relief.  Before this Court, the state argues that it was error for the hearing justice to determine that trial counsel rendered constitutionally deficient representation when counsel (1) did not request a jury instruction for the aiding-and-abetting charges in line with *Rosemond v. United States*, 572 U.S. 65 (2014); and (2) did not challenge the sufficiency of the evidence that would support an aiding-and-abetting conviction.  For the reasons set forth in this opinion, we quash the judgment of the Superior Court.

**I**

**Facts and Travel**

In 2006, Whitaker was convicted of (1) count one, first degree murder, which merged with count two, first degree robbery, and sentenced to life; (2) count five, assault with a dangerous weapon, and sentenced to fifteen years, with ten years to serve and five years suspended, with probation; (3) count six, carrying a handgun without a license, and sentenced to

five years; (4) count seven, use of a firearm during the commission of a violent crime, and sentenced to twenty years to serve; (5) count eight, discharging a firearm in the commission of a crime of violence, and sentenced to life to be served consecutively with the first life sentence; and (6) count nine, committing a crime of violence while armed and having available a firearm, and sentenced to ten years. We affirmed his conviction in *State v. Whitaker*, 79 A.3d 795 (R.I. 2013), and the facts pertinent to the underlying case are set forth in that opinion. In this opinion, we will discuss only those facts that are relevant to this petition, which was filed by the state after the Superior Court granted Whitaker's application for postconviction relief.

Whitaker was present at the apartment of Tammy Kennedy on the night in 2002 that Joel Jackson was shot and killed. He was accompanied by two friends, Brandon Robinson and Richard Isom. The three men had gathered earlier in the evening at Robinson's home. When they arrived at Kennedy's apartment, George Toby—Kennedy's friend—engaged the three men in conversation, and at some point Whitaker, Robinson, Isom, and Toby all withdrew to the hallway outside the apartment. After engaging in another brief conversation, Toby left the three men in the hallway and returned to the apartment. According to Robinson and Isom, Whitaker stated that he wanted to steal a gold chain that Jackson was wearing.

Robinson and Whitaker then re-entered the apartment and a scuffle ensued. Toby testified that he saw Robinson and Jackson struggling and that he entered the fight to separate the men. As he did, he noticed that Robinson was holding a gun, and he grabbed his hand in an effort to control the weapon. Corissa Richardson, who was only thirteen years of age at the time, but sixteen when she testified at trial, had accompanied Jackson to the party and said that she saw Whitaker remove a handgun from his coat pocket and point it in the direction of the melee. Isom, who testified pursuant to a cooperation agreement with the state, also said that Whitaker

entered the apartment with a firearm on his person, and Robinson, who was also a cooperating witness, said that Whitaker drew his gun after he came back into the apartment. The end result was that Robinson, Jackson, and Toby all received gunshot wounds; Jackson's was fatal.

Robinson further testified at trial that, after Jackson was shot, he took the gold chain and a medallion that Jackson had been wearing. He said that he placed the gold chain in his coat pocket and carried the medallion in his hand. Isom testified that he later removed the gold chain from Robinson's coat pocket. Whitaker, Robinson, and Isom were eventually arrested and both Robinson and Isom agreed to testify against Whitaker in exchange for charging and sentencing considerations.

After Whitaker was convicted, he filed a direct appeal to this Court in which he asserted various claims of error. Relevant to this appeal, Whitaker claimed on direct appeal that there had been insufficient evidence for the jury to convict him under an aiding-and-abetting theory. *Whitaker*, 79 A.3d at 805. However, we determined that this issue was not properly raised before the trial justice and therefore had been waived. *Id.* Whitaker also claimed on direct appeal that the aiding-and-abetting instruction that had been provided by the trial justice to the jury was erroneous. *Id.* at 807. Specifically, Whitaker claimed that "there was insufficient evidence in the record to support an aiding-and-abetting instruction because there [was] no evidence in the record to establish an action consistent with his supposed criminal intent." *Id.* However, we held that, based on the testimony of Robinson, Isom, and Richardson, there was sufficient evidence in the record to support an aiding-and-abetting instruction. *Id.*

Nearly one year after we affirmed his conviction, Whitaker filed an application for postconviction relief. In that filing, he claimed that trial counsel had failed to propose jury instructions in line with *Rosemond*; specifically, that the state should have had to prove that

Whitaker actively participated in the underlying violent crime with advance knowledge that a confederate would use or carry a gun during the commission of the crime. Whitaker further argued that his trial counsel "failed to raise that there was insufficient evidence for the jury to convict him under an aiding-and-abetting theory because the jury found that there was no conspiracy, and the only evidence that supported aiding and abetting was the same evidence that supported the conspiracy count, on which defendant was acquitted."[1]

After a hearing, the hearing justice granted Whitaker's application, directing that counts one (murder), two (first degree robbery), seven (using a firearm during the commission of a violent crime), eight (discharging a firearm during the commission of a violent crime), and nine (carrying a firearm during the commission of a violent crime) be vacated. In her bench decision, the hearing justice stated that the United States Supreme Court's decision in *Rosemond* "should apply in any situation in which the prosecution relies on a theory of aiding and abetting, regardless of whether or not there are additional elements over and above those supporting the predicate offense."[2] The hearing justice also held that, although the federal aiding-and-abetting statute and the Rhode Island aiding-and-abetting statute were different, *Rosemond* nonetheless applied to this case. Specifically, she found that "criminal culpability requires knowing and voluntary participation in a crime, as opposed to inadvertent, unplanned, or mistaken enablement of the crime[,]" and that "[t]his necessarily would require the aider and abettor to fully understand his cohort's intentions beforehand and far enough in advance to opt out of the enterprise." Additionally, the hearing justice recognized that there was a split of authority across

---

[1] Whitaker raised additional arguments in his application, none of which are before us in this review.

[2] The hearing justice also cited *United States v. Encarnación-Ruiz*, 787 F.3d 581 (1st Cir. 2015), for the proposition that *Rosemond* did not limit its application to so-called double-barreled crimes.

jurisdictions as to whether *Rosemond* should be given retroactive effect. However, irrespective of *Rosemond*'s retroactivity, she stated that she had the authority to grant Whitaker's application for postconviction relief based on ineffective assistance of counsel. It was her opinion that the various aiding-and-abetting instructions she had given at Whitaker's trial failed to incorporate *Rosemond*'s holding; namely, that the government had to prove beyond a reasonable doubt "that the defendant actively participated in the underlying * * * violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond*, 572 U.S. at 67. She further stated that, had defense counsel objected to her charge, she would have considered *Rosemond* and instructed the jury differently. She therefore concluded that, because Whitaker's trial counsel failed to so object, Whitaker had satisfied both prongs of the analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), with respect to his claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690, 694.

Moreover, the hearing justice remarked that this Court, in the opinion affirming Whitaker's conviction on direct appeal, "got it wrong when it stated * * * that there was sufficient evidence to instruct the jury on aiding and [a]betting." Indeed, she offered that she should have been reversed on that claim because there was no proof that Whitaker had advance knowledge of Robinson's intentions. Accordingly, the hearing justice granted Whitaker's application as to the aforementioned counts and directed that the judgment of conviction and sentences for those counts be vacated. We granted the state's petition for writ of certiorari.

## II

### Standard of Review

Pursuant to G.L. 1956 § 10-9.1-1, postconviction relief is a remedy "available to a convicted defendant who contends that his original conviction or sentence violated rights

afforded to him under the state or federal constitution." *Barros v. State*, 180 A.3d 823, 828 (R.I. 2018) (quoting *Hazard v. State*, 968 A.2d 886, 891 (R.I. 2009)). An applicant for postconviction relief bears "[t]he burden of proving, by a preponderance of the evidence, that such [postconviction] relief is warranted[.]" *Navarro v. State*, 187 A.3d 317, 325 (R.I. 2018) (quoting *Motyka v. State*, 172 A.3d 1203, 1205 (R.I. 2017)). "This Court will not disturb a [hearing] justice's factual findings made on an application for post[ ]conviction relief absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence in arriving at those findings." *Id.* (quoting *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I. 2011)). However, as we have frequently stated, "this Court will review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Barros*, 180 A.3d at 828 (quoting *Hazard*, 968 A.2d at 891). Nonetheless, "when we are called upon to conduct such a *de novo* review with respect to issues of constitutional dimension, we still accord great deference to a hearing justice's findings of historical fact and to inferences drawn from those facts." *Id.* (quoting *DeCiantis v. State*, 24 A.3d 557, 569 (R.I. 2011)).

## III

### Discussion

Before this Court, the state argues that the hearing justice erred when she held that Whitaker's trial counsel rendered constitutionally deficient representation because he did not request a jury instruction based on *Rosemond* for the aiding-and-abetting counts. The state also argues that the hearing justice erred when she held that trial counsels' performance was deficient for failing to challenge the sufficiency of the evidence in support of an aiding-and-abetting theory.

When examining claims of ineffective assistance of counsel, it is well settled that we will adhere to the requirements set forth in *Strickland v. Washington*. *Navarro*, 187 A.3d at 325. "[T]he benchmark issue is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Barros*, 180 A.3d at 828 (quoting *Young v. State*, 877 A.2d 625, 629 (R.I. 2005)).

An applicant must satisfy two criteria to prevail on a claim of ineffective assistance of counsel. *Navarro*, 187 A.3d at 326. "First, the applicant must demonstrate that counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Id.* (quoting *Chapdelaine*, 32 A.3d at 941). "This prong can be satisfied only by a showing that counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Chapdelaine*, 32 A.3d at 941). In evaluating counsel's performance, we keep in mind that there is "a strong presumption * * * that an attorney's performance falls within the range of reasonable professional assistance and sound strategy[.]" *Id.* (quoting *Rivera v. State*, 58 A.3d 171, 180 (R.I. 2013)).

"Second, the defendant must show that the deficient performance prejudiced the defense." *Navarro*, 187 A.3d at 326 (quoting *Neufville v. State*, 13 A.3d 607, 610 (R.I. 2011)). Specifically, the second prong of *Strickland* requires the applicant to "demonstrate that the deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial." *Barros*, 180 A.3d at 829 (quoting *Page v. State*, 995 A.2d 934, 943 (R.I. 2010)). In other words, the applicant must show that "there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (emphasis in original) (quoting *Page*, 995 A.2d at

943).  We have held that "[t]his is a 'highly demanding and heavy burden.'" *Id.* (quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)).

## A

### *Rosemond***'s Applicability**

The state argues that trial counsel did not render deficient representation by not seeking a *Rosemond* jury instruction for the aiding-and-abetting charges.  The state contends that *Rosemond* should not be given retroactive effect because (1) the ruling in that case did not come into existence until nine years after the trial in this case, and (2) the Supreme Court of the United States did not specify its retroactivity to cases on collateral review.  Moreover, the state posits that Whitaker cannot be entitled to postconviction relief under *Rosemond* when there is evidence that he brought a weapon to the scene of the crime himself and that he discharged that weapon.

In *Rosemond*, the defendant participated in a "drug deal gone bad" in which either he or one of his confederates fired a weapon. *Rosemond*, 572 U.S. at 67.  As a result of the uncertainty as to who discharged the firearm, the United States charged the defendant with violating 18 U.S.C. § 924(c), which prohibits "us[ing] or carry[ing]" a firearm "during and in relation to any crime of violence or drug trafficking crime[,]" as well as aiding and abetting that offense under 18 U.S.C. § 2. *Id.* at 68.  The defendant was convicted and filed an appeal to the United States Court of Appeals for the Tenth Circuit, which affirmed his conviction. *Id.* at 69.  In vacating the defendant's conviction, the Supreme Court, on the defendant's petition for writ of certiorari, first noted that the federal aiding-and-abetting statute derives from common-law standards for accomplice liability, and that "a person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id.* at 70, 71.  The Court acknowledged that an

aider and abettor's conduct need only facilitate one element of the principal crime. *Id.* at 74, 75 ("In helping to bring about one part of the offense (whether trafficking drugs or using a gun), [the defendant] necessarily helped to complete the whole. And that ends the analysis as to his conduct.").

However, with respect to proving *mens rea*, the Supreme Court held that a defendant's intent must extend to the entire principal offense to be convicted of an aiding-and-abetting crime. *Rosemond*, 572 U.S. at 77-78. In connection with 18 U.S.C. § 924(c), the Supreme Court stated:

> "An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Id.*

The Supreme Court further stated that, under 18 U.S.C. § 924(c), the defendant's knowledge of the presence of a firearm must be advance knowledge; in other words, "[w]hen an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense." *Id.* at 78 (emphasis in original).

We note, however, that Whitaker was convicted not under federal law, but under Rhode Island's aiding-and-abetting statute for the principal crimes of murder, robbery, and the weapons offenses. General Laws 1956 § 11-1-3 states:

> "Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."

To convict a defendant as an aider and abettor under Rhode Island law, "the circumstances must establish that a defendant shared in the criminal intent of the principal [and that there was] a community of unlawful purpose at the time the act [was] committed." *State v. Delestre*, 35 A.3d 886, 895 (R.I. 2012) (quoting *State v. Gazerro*, 420 A.2d 816, 828 (R.I. 1980)). The prosecution must also "present some evidence that a defendant 'participat[ed] in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed.'" *Id.* (quoting *Gazerro*, 420 A.2d at 828). However, these "standards do not require * * * that the accused must foresee the consequences of such unlawful acts." *Id.* (quoting *State v. Diaz*, 654 A.2d 1195, 1202 (R.I. 1995)). Under Rhode Island law, "(only) if [the] defendant knowingly and intentionally aided and abetted [the crime] could he be held responsible for the natural, or reasonable, or probable consequences of that act." *Id.*; *see also State v. Lambert*, 705 A.2d 957, 963 (R.I. 1997) (holding that a jury instruction that stated that "[a] person who aids or abets is held responsible for the natural, or reasonable, or probable consequences of any act that he knowingly and intentionally aided or in which he assisted or participated" had "adequately summarized and instructed on the applicable law of Rhode Island on aiding and abetting").

In our opinion, *Rosemond* plows no new constitutional ground and applies only to 18 U.S.C. § 924(c) and the federal aiding-and-abetting statute. It has no impact on state law. Other states and federal circuit courts are in agreement with this principle. *See Hicks v. State*, 759 S.E.2d 509, 514-15 n.3 (Ga. 2014) (noting, in a case involving state crimes, that *Rosemond* "arose under federal law and thus does not control here"); *State v. Ward*, 473 S.W.3d 686, 693 (Mo. Ct. App. 2015) ("Nothing in *Rosemond*, suggests that its holding rests on any constitutional requirement or has any application to state criminal laws on accomplice liability; rather, the Court's analysis was merely a question of federal interpretation of the federal aiding and abetting

- 10 -

statute. As such, it does not control here even where the federal statute and state aiding and abetting statutes are similar.").[3]

Whitaker cites to caselaw from the United States Court of Appeals for the First Circuit that was already in existence at the time that this case was tried in support of his contention that the First Circuit followed *Rosemond*'s analysis even before *Rosemond* was decided. However, it is significant that the cases cited by Whitaker were also interpreting 18 U.S.C. § 924(c) and the federal aiding-and-abetting statute and for those same reasons are inapplicable to this jurisdiction's aiding-and-abetting statute. *See United States v. Medina-Román*, 376 F.3d 1, 5-6 (1st Cir. 2004) ("Knowledge is the central element of the crime of aiding and abetting the carrying or use of a firearm in violation of [18 U.S.C.] § 924(c)(1). To support aiding and abetting criminal liability under 18 U.S.C. § 2, that knowledge cannot be mere knowledge of a likelihood that a firearm will be carried or used but rather must amount to a practical certainty of the other's carrying or use."); *United States v. Spinney*, 65 F.3d 231, 239 (1st Cir. 1995) (under 18 U.S.C. § 924(c), the government has the burden of providing evidence "suggesting that firearms were actually contemplated in the planning stages, or that [the aider and abettor] had any actual knowledge that [the principal] would be armed"). Likewise, *United States v. Encarnación-Ruiz*, 787 F.3d 581 (1st Cir. 2015)—upon which the hearing justice in the present

---

[3] We also note the following unpublished opinions which we do not cite for precedential value, but by way of example. *See Cordero v. United States*, No. 15-530, 2015 U.S. App. LEXIS 23112, at *2 (2d Cir. Mar. 19, 2015) ("*Rosemond* does not set out a rule of constitutional law; however, even if that opinion is deemed to have announced a constitutional rule, it has not been made retroactive to cases on collateral review by the Supreme [Court]."); *Hughes v. Epps*, 561 Fed. App'x. 350, 354 n.4 (5th Cir. 2014) (noting that *Rosemond* does not apply to state law robbery crime); *People v. Jordan*, No. 326735, 2016 WL 5930006, at *2 (Mich. Ct. App. Oct. 11, 2016) ("*Rosemond* is limited to prosecutions for particular statutory federal offenses, is irrelevant to this case, and does not change the aiding-and-abetting standard in Michigan."); *State v. Dull*, 372 Wis. 2d 458, 2016 WL 6271732, at *2 (Wis. Ct. App. Oct. 26, 2016) ("The [C]ourt's decision [in *Rosemond*] was based upon its interpretation of federal statutes, not constitutional principles.").

case relied in deciding that *Rosemond* was not limited to double-barreled crimes—also interpreted the federal aiding-and-abetting statute for the principal crime of producing child pornography and thus is also not applicable here. *See Encarnación-Ruiz*, 787 F.3d at 584 (stating that the defendant was charged with aiding and abetting under 18 U.S.C. § 2251(a) and 18 U.S.C. § 2).[4]

**B**

***Rosemond*'s Retroactive Application on Collateral Review**

Whitaker's appeal was decided in 2013, and *Rosemond* was not decided until 2014. Whitaker sought to have *Rosemond* apply retroactively, in his postconviction relief application, a case on collateral review. We addressed the circumstances under which a new rule of law is to be given retroactive application in *Pailin v. Vose*, 603 A.2d 738 (R.I. 1992). There, we adopted the framework set forth by the Supreme Court of the United States in *Sawyer v. Smith*, 497 U.S. 227 (1990), *Teague v. Lane*, 489 U.S. 288 (1989), and *Griffith v. Kentucky*, 479 U.S. 314 (1987). *Pailin*, 603 A.2d at 741. Relevant to this opinion, in *Teague*, the Supreme Court held that a new rule for the conducting of criminal prosecutions should be given retroactive application to cases on collateral review. *Teague*, 489 U.S. at 301. Specifically, "[t]he Court held that 'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.'" *Pierce v. Wall*, 941 A.2d 189, 195 (R.I. 2008) (quoting *Teague*, 489 U.S. at 301). "Thus, 'a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Id.* (emphasis in original) (quoting *Teague*, 489 U.S. at 301).

---

[4] The state also argues that *Rosemond* is inapplicable to Rhode Island's "natural, or reasonable, or probable consequences" aiding-and-abetting doctrine. However, because we rule that *Rosemond* is inapplicable to state law, we need not, and do not, reach this argument.

It is our firm conclusion that *Rosemond* did not establish a new rule, nor did it impose a new obligation on state law. *See Hicks*, 759 S.E.2d at 514-15 n.3; *Ward*, 473 S.W.3d at 693.[5] Also, the holding in *Rosemond* was dictated by established precedent, and nowhere in that decision did the Supreme Court state that its holding broke "new ground." *See Rosemond*, 572 U.S. at 76-78. The Supreme Court first observed that the federal aiding-and-abetting statute "reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." *Id.* at 70. It then reviewed "some basics about [the] aiding and abetting law's intent requirement," and noted that it had "previously found [the] intent requirement satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." *Id.* at 76, 77. The Court then stressed that "[*t*]*he same principle holds here*: An active participant in a drug transaction has the intent needed to aid and abet a [18 U.S.C.] § 924(c) violation when he knows that one of his confederates will carry a gun[,]" and it additionally held that the defendant's knowledge of a firearm must be advance knowledge. *Id.* at 77, 78 (emphasis added).[6] Therefore, it is clear that the Court founded its decision in *Rosemond* on established

---

[5] We also refer back to the previously cited unpublished opinions, which have no precedential value, but which we believe to be instructive. *See Cordero*, 2015 U.S. App. LEXIS 23112, at *2; *Hughes*, 561 Fed. App'x. at 354 n.4; *Jordan*, 2016 WL 5930006, at *1; *Dull*, 2016 WL 6271732, at *2.

[6] We also note that, although federal circuit courts have not discussed whether *Rosemond* announced a new rule, some imply that it did not. *See United States v. García-Ortiz*, 792 F.3d 184, 190 (1st Cir. 2015) ("[T]his court had already been applying the 'advance knowledge' requirement for aiding and abetting a [18 U.S.C.] § 924(c)(1) crime prior to *Rosemond*."); *Goree v. Chapa*, 589 Fed. App'x. 275, 276 (5th Cir. 2015) (noting precedent under which the petitioner was convicted "was consistent with *Rosemond*"); *Berry v. Capello*, 576 Fed. App'x. 579, 592 (6th Cir. 2014) (noting that the "Supreme Court did not state whether the principles explained in *Rosemond* apply retroactively to convictions that are final under state law"). Additionally, an overwhelming majority of federal district courts have found that *Rosemond*'s holding was determined by existing precedent. *See, e.g.*, *Gonzalez v. Baltazar*, 2017 WL 2175804, at *3 n.2 (M.D. Pa. May 17, 2017); *Kerr v. United States*, 2016 WL 958202, at *3 (E.D.N.C. Mar. 8,

precedent, and it did not create a new rule that was to be retroactive to cases on collateral review. *See id.*; *Pierce*, 941 A.2d at 195.[7]

## C

## Whitaker Himself Was Armed

Moreover, Robinson and Isom each testified that, before the day of the incident, Whitaker had shown them his .22 caliber pistol, and that, on the day of the incident, the three men traveled to Whitaker's home to retrieve the weapon because, as Robinson testified, Robinson was concerned that Kennedy's apartment was located in a dangerous neighborhood. Robinson testified that, later that evening while inside Kennedy's apartment complex, Whitaker told him he wanted to steal Jackson's chain, and Robinson "told [Whitaker] that it wasn't a good idea [because] worse come to worse, shots are going to be fired." According to Robinson, Whitaker then replied, "I got it[,]" which, according to Robinson, meant that Whitaker had everything "under control."

Richardson also testified that, once Whitaker was back inside Kennedy's apartment, and as the struggle ensued, "he reached into his coat and took out a gun" and "pointed it in the direction of Joel [Jackson] and Brandon [Robinson.]" As we noted in Whitaker's direct appeal, "Robinson also testified that Whitaker drew his gun after he came back into the apartment," and "Isom testified that Whitaker had brought a weapon to the apartment." *Whitaker*, 79 A.3d at 801,

---

2016); *Cooper v. O'Brien*, 2015 WL 6085717, at *4 (N.D.W. Va. Oct. 16, 2015); *United States v. Davis*, 2015 WL 13721525, at *4 (D.S.C. Feb. 9, 2015).

[7] Although we are cognizant that the Seventh Circuit has held that *Rosemond* is applicable to cases on collateral review, it is significant that that court recognized that *Rosemond* is applicable only to 18 U.S.C. § 924(c) and the federal aiding-and-abetting statute, not state law. *See Montana v. Cross*, 829 F.3d 775, 784 (7th Cir. 2016) ("*Rosemond, which addressed the requirements for criminal liability under [18 U.S.C.] § 924(c), is a substantive rule, and we therefore shall apply it retroactively to cases on collateral review.*") (emphasis added). We thus reiterate our reasoning above and find that *Rosemond* has no implications on state law.

801 n.4. Both Toby and Robinson testified that the shots that were fired did not come from Robinson's gun. Moreover, an expert testified that the slugs taken from all three of the men who were hit came from a .22 caliber weapon, the same type of weapon that Isom and Robinson testified that Whitaker was carrying at the time. As this Court said in Whitaker's direct appeal, a jury certainly could have found, and did find, that Whitaker brought a gun to the scene of the crime. *See id.* at 810. As other jurisdictions have held, Whitaker's reliance on *Rosemond*, even if the case was applicable here, would nonetheless be misplaced, because he would have already had advance knowledge that a weapon was going to be used to commit the robbery. This is so because he carried one himself. *See Jefferson v. United States*, 2017 WL 2819812, at \*3-4 (N.D. Miss. Jun. 28, 2017) (holding that, even if *Rosemond* was applicable, the defendant would nonetheless have been convicted; citing to cases on direct appeal for summary of evidence in ruling that not only did the defendant know that firearms would be used in commission of his drug crimes, but "*he actually provided firearms for others to use during the crimes*") (emphasis in original); *Jimenez v. United States*, 2015 WL 4507764, at \*2 (S.D.N.Y. July 23, 2015) ("*Rosemond* would only affect the outcome of [a] proceeding if (1) [the defendant] himself did not use, carry, and possess a firearm in relation to the robberies with which he was charged, *and* (2) [the defendant] did not have advance knowledge that one of his confederates would use or carry a gun during those robberies."); *United States v. Burwell*, 79 F. Supp. 3d 1, 30 (D.D.C. 2015) ("Here, it is clear that Burwell himself carried a weapon during the commission of two of the bank robberies and, thus, his reliance on *Rosemond* is misplaced."). Thus, trial counsels' performance was not deficient in failing to propose aiding-and-abetting jury instructions in line with *Rosemond* because that case is simply inapplicable.

# D

## Sufficiency of the Evidence

The state also maintains that trial counsels' performance was not deficient because of a failure to raise a challenge to the sufficiency of the evidence to charge Whitaker under an aiding-and-abetting theory. To support this argument, the state directs us to the statement in our opinion on Whitaker's direct appeal that there was sufficient evidence for an aiding-and-abetting jury instruction. *See Whitaker*, 79 A.3d at 807. The state also contends that, in his brief on direct appeal, Whitaker conceded that there was sufficient evidence to charge him with an aiding-and-abetting theory.

We conclude that Whitaker's trial attorneys did not provide deficient representation when they did not challenge the sufficiency of the evidence to charge Whitaker under an aiding-and-abetting theory. On direct appeal, Whitaker attempted to argue that there was insufficient evidence for the jury to convict him under an aiding-and-abetting theory, but we ruled that this issue had been waived because it was not raised before the trial justice. *Whitaker*, 79 A.3d at 805. However, in that appeal, Whitaker also argued, in a separate argument that was not waived, "that there was insufficient evidence in the record to support an aiding-and-abetting instruction because there is no evidence in the record to establish an action consistent with his supposed criminal intent." *Id.* at 807. In turning aside this argument, we stated the following:

> "The defendant overlooks, however, that the testimony of Isom and Robinson includes their statements that he arrived at the apartment armed, that before re-entering the apartment he expressed an interest in taking Jackson's chain, that he and Robinson then re-entered the apartment, and that Robinson actually took Jackson's chain. Further, Richardson testified that during the struggle over Robinson's gun, she observed defendant draw a gun and aim it towards the scrum.

> "We are of the firm opinion that, based on the evidence presented during the trial, it was not improper for the trial justice to instruct the jury on aiding and abetting."[8] *Id.*

We hold that that evidence was also sufficient to convict Whitaker under an aiding-and-abetting theory.[9] *See id.*; *see also State v. Long*, 61 A.3d 439, 446-47 (R.I. 2013). Accordingly, the hearing justice erred when she held that trial counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence with respect to an aiding-and-abetting theory.

## IV

## Conclusion

For the reasons set forth in this opinion, we quash the judgment granting postconviction relief and reinstate Whitaker's conviction with respect to the aiding-and-abetting counts for felony murder (count one), robbery (count two), using a firearm in the commission of a crime of violence (count seven), discharging a firearm in the commission of a crime of violence (count eight), and committing a crime of violence while armed and having available a firearm (count

---

[8] We note that the trial justice did not give an aiding-and-abetting instruction, written or oral, with respect to the felony murder charge. The jury verdict summary sheet, however, provided an aiding-and-abetting charge for felony murder. Whitaker argued below that, had a jury instruction in line with *Rosemond* been given regarding the felony murder charge, he would have been acquitted of that charge. However, the robbery jury instruction—which was the underlying charge for felony murder—contained an aiding-and-abetting instruction, and thus a reading of the entire instructions as a whole would have not misled the jury. *See Roach v. State*, 157 A.3d 1042, 1049 (R.I. 2017) ("This Court examines the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, * * * and * * * review[s the] challenged portions * * * in the context in which they were rendered.") (quoting *State v. Long*, 61 A.3d 439, 445 (R.I. 2013)).

[9] Moreover, we agree with the state that, in his direct appeal, Whitaker conceded that there was sufficient evidence to charge him under an aiding-and-abetting theory. *See* Opening Brief of Appellant, *State v. Whitaker*, 79 A.3d 795 (R.I. 2013) (No. 2007-145-C.A.), 2002 WL 11875284, *7, *8 ("[N]o evidence *other than the two cooperating witnesses' allegations of an agreement - rejected by the jury in its conspiracy verdicts - could possibly support a conviction based upon aiding and abetting. * * * Apart from the brief testimony by Richard Isom and Brandon Robinson about the conversation that the three men had in the hallway regarding robbing Joel Jackson, which formed the basis for the conspiracy instruction, there is nothing else to support the trial justice instructing the jury on aiding and abetting.") (emphasis added).

- 17 -

nine).  The papers in this case are remanded to the Superior Court with our decision endorsed thereon.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Kendall Whitaker v. State of Rhode Island. |
| **Case Number** | No. 2016-102-M.P.<br>(PM 14-5309) |
| **Date Opinion Filed** | January 17, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia A. Hurst |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>George J. West, Esq. |
| | For Respondent:<br><br>Aaron L. Weisman<br>Department of Attorney General |